# Authority for Issuing Hatch Act Regulations

The Office of Personnel Management, rather than the Office of Special Counsel, has the authority to promulgate regulations delimiting the scope and nature of permissible activities under the Hatch Act Reform Amendments of 1993.

February 2, 1994

MEMORANDUM OPINION FOR THE DEPUTY SPECIAL COUNSEL
OFFICE OF SPECIAL COUNSEL

You have asked whether the Office of Personnel Management ("OPM") or the Office of Special Counsel ("OSC") has the authority to promulgate regulations delimiting the scope and nature of impermissible political activities under the Hatch Act Reform Amendments of 1993 ("Hatch Act Amendments"), Pub. L. No. 103-94, sec. 2(a), §§ 7321-7326, 107 Stat. 1001, 1001-1004.[1] OPM contends that OSC has plenary authority to issue Hatch Act regulations, whereas OPM is empowered to promulgate Hatch Act regulations only on two narrowly-defined subjects.[2] OSC, on the other hand, asserts that it lacks authority to promulgate Hatch Act regulations. It contends that OPM historically has been responsible for issuing general Hatch Act regulations and that no provision in the Hatch Act Amendments has reassigned or diminished OPM's responsibility in this regard. After examining existing precedent, the statutes outlining the responsibilities of OPM and OSC for implementing the Hatch Act, and the text and legislative history of the Hatch Act Amendments, we conclude that OPM possesses the authority to promulgate regulations explicating the Hatch Act as amended.

## I. *The Need for Revised Hatch Act Regulations*

For more than fifty years, the Hatch Act prohibited federal workers from participating in a broad range of political activities. *See United Pub. Workers v. Mitchell*, 330 U.S. 75, 78-79 (1947); *see also United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548 (1973) (upholding Hatch Act provision forbidding federal employees to take an active part in political management or political campaigns). In 1993, however, Congress eliminated many of the restrictions that had previously cabined the political activities of federal employees. *See* Hatch Act Amendments, Pub. L. No. 103-94, 107 Stat. 1001

---

[1] Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from James A Kahl, Deputy Special Counsel, U S Office of Special Counsel (Dec. 28, 1993)

[2] The position of OPM is set forth in a letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Lorraine Lewis, General Counsel, Office of Personnel Management (Jan 28, 1994).

(1993). Despite the steps taken by Congress to liberalize the rules governing the political conduct of federal workers, some political activities remain generally impermissible for all federal employees, *see, e.g., id.* sec. 2(a), § 7323(a)(2), 107 Stat. at 1002 (prohibiting federal employees from soliciting, accepting, or receiving political contributions), and some federal employees must continue to observe stringent limitations upon involvement in the political process. *See, e.g., id.* sec. 2(a), § 7323(b)(3), 107 Stat. at 1003 ("No employee of the Criminal Division of the Department of Justice . . . may take an active part in political management or political campaigns."). If a federal employee violates any of these provisions, which will take effect on February 3, 1994, the employee "shall be removed from his position." *Id.* sec. 2(a), § 7326, 107 Stat. at 1004. Accordingly, federal employees who wish to participate in political activities need immediate guidance in the form of regulations distinguishing permissible political conduct from impermissible activities.[3]

## II. *The Division of Hatch Act Regulatory Responsibility*

Until 1978, the Civil Service Commission bore the entire burden of administering the Hatch Act. S. Rep. No. 103-57, at 4 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1802, 1805. But in passing the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) ("Civil Service Reform Act"), Congress divided the responsibility for implementing the Hatch Act into three discrete tasks: the Merit Systems Protection Board ("MSPB") was "charged with adjudicating Hatch Act cases," OPM became "responsible for promulgating Hatch Act regulations," and OSC received the authority "to investigate allegations of Hatch Act violations and present them to the MSPB." *American Fed'n of Gov't Employees, AFL-CIO v. O'Connor*, 747 F.2d 748, 753 (D.C. Cir. 1984) (footnotes omitted), *cert. denied*, 474 U.S. 909 (1985); *see also* S. Rep. No. 95-969, at 24 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2746. In 1989, Congress refined this division of authority by formally separating OSC from the MSPB and independently enumerating the powers and functions of OSC.[4] *See* Whistleblower Protection Act of 1989, Pub. L. No. 101-12, §§ 3(a)(11)-(13), 103 Stat. 16, 19-21 (adding 5 U.S.C. §§ 1211-1212, which "established the Office of Special Counsel" as an independent body and set forth the powers and functions of the Office of Special Counsel).

---

[3] In a January 13, 1994, letter concerning the dispute at hand, Representative William L Clay and Senator John Glenn made precisely this point· "Given the dire consequences that can result to employees who violate the Hatch Act, in our view it is imperative that Federal employees be provided timely guidance as to what constitutes permissible and impermissible political activity." Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from William L Clay, Chairman, Committee on Post Office and Civil Service, and John Glenn, Chairman, Committee on Governmental Affairs (Jan. 13, 1994)

[4] The Civil Service Reform Act of 1978 provided for a "Special Counsel of the Merit Systems Protection Board" whose powers were defined in conjunction with those of the MSPB *See* Civil Service Reform Act, sec. 202(a), §§ 1204-1208, 92 Stat. at 1122-30

The three-way division of Hatch Act authority now flows from clear statutory pronouncements. *See* 5 U.S.C. § 1204 (defining powers and functions of the MSPB); 5 U.S.C. § 1212 (setting forth powers and functions of OSC); 5 U.S.C. § 1103 (prescribing functions of director of OPM). Specifically, the MSPB has authority to hear and adjudicate "all matters within the jurisdiction of the Board," 5 U.S.C. § 1204(a)(1), take action to enforce its own orders, *id.* § 1204(a)(2), "prescribe such regulations as may be necessary for the performance of its functions," *id.* § 1204(h), and review "rules and regulations of the Office of Personnel Management." *Id.* § 1204(a)(4). This last responsibility, of course, presupposes that OPM will issue general regulations. *See American Fed'n of Gov't Employees*, 747 F.2d at 755 (MSPB's role includes "the review of Hatch Act regulations promulgated by the OPM").

OSC possesses the authority to investigate and prosecute alleged Hatch Act violations, 5 U.S.C. §§ 1212(a), 1215(a), 1504, and "prescribe such regulations as may be necessary to perform the functions of the Special Counsel."[5] *Id.* § 1212(e). The regulations issued by OSC are not subject to oversight by the MSPB. *See* 5 U.S.C. § 1204. OSC also has the power to issue advisory opinions on Hatch Act questions, *id.* § 1212(f), but these advisory opinions have no binding effect on the MSPB. *See American Fed'n of Gov't Employees*, 747 F.2d at 752-55 (explaining the nature and effect of "the advice the Special Counsel is permitted to give").

OPM derives its authority over personnel management from two sources. First, specific responsibilities are vested in the Director of OPM by 5 U.S.C. § 1103, including the obligation to "publish in the Federal Register general notice of any rule or regulation which is proposed by [OPM] and the application of which does not apply solely to [OPM] or its employees." *Id.* § 1103(b)(1). Second, the Director of OPM is empowered to assume "authority for personnel management functions" delegated by the President.[6] *Id.* § 1104(a)(1). The Director of OPM

---

[5] OPM asserts that this provision empowers OSC to issue Hatch Act regulations. Both the MSPB and OSC have been granted the basic authority to prescribe all regulations necessary to perform their functions. Indeed, the language of the statutes vesting this fundamental operational authority in the MSPB and OSC is virtually identical. *Compare* 5 U S C § 1204(h) ("The [Merit Systems Protection] Board shall have the authority to prescribe such regulations as may be necessary for the performance of its functions ") *with* 5 U S C § 1212(e) ("The Special Counsel may prescribe such regulations as may be necessary to perform the functions of the Special Counsel.') The similarity in the language of these two statutes undermines OPM's claim that 5 U S C § 1212(e) confers upon OSC the power to issue Hatch Act regulations and bolsters OSC's interpretation of 5 U S.C § 1212(e) as a simple assignment of the authority to promulgate the regulations necessary to run OSC itself. Indeed, if OPM is correct in interpreting 5 U S C § 1212(e) as sufficiently capacious to accommodate the function of issuing Hatch Act regulations, then the MSPB similarly possesses plenary authority to promulgate Hatch Act regulations under the virtually identical language of 5 U S C § 1204(h). The more logical interpretation dictates that the MSPB and OSC have been granted nothing more than the authority to issue all regulations that they deem necessary for their own internal operations

[6] The Director of OPM also derives residual authority from section 102 of the President's Reorganization Plan of 1978, which transferred to the Director of OPM "all functions vested by statute in the United States Civil Service Commission' that were not expressly assigned to any other entity Reorg Plan No. 2 of 1978, 3 C.F R 323 (1979), *reprinted in* 5 U S.C. § 1101 note, *and in* 92 Stat 3783, *see also American Fed'n of Gov't Employees*, 747 F 2d at 753 n 13 (identifying President's Reorganization Plan as source of OPM authority)

may, in turn, delegate to the heads of executive branch agencies "any function vested in or delegated to the Director [of OPM]," *id.* § 1104(a)(2), but this broad authority to delegate cannot "be construed as affecting the responsibility of the Director [of OPM] to prescribe regulations and to ensure compliance with the civil service laws, rules, and regulations." *Id.* § 1104(b)(3).

The statutory provisions apportioning the power once held exclusively by the Civil Service Commission clearly authorize OPM to issue general regulations under the Hatch Act. Consistent with these statutes, OPM revised the existing Hatch Act regulations on April 24, 1984. *See* Political Activity of Federal Employees, 49 Fed. Reg. 17,431, 17,432-33 (1984) (amendments codified at 5 C.F.R. §§ 733.101(g)-(j), 733.122(b)(12)-(16)(1993)). OPM rejected an attack upon its authority to issue Hatch Act regulations by emphatically stating that "OPM believes that it does have the authority to regulate the partisan political activity of Federal employees."[7] *Id.* at 17,431. Although OPM now argues that it lacks authority to undertake such a task, the tripartite system of Hatch Act implementation — including the statutory language setting up the division of labor — cuts against OPM's position. The MSPB has been assigned the task of reviewing "rules and regulations of the Office of Personnel Management," 5 U.S.C. § 1204(a)(4), yet the statute outlining the powers and functions of the MSPB contains no corresponding assignment of responsibility for screening regulations promulgated by OSC. *See* 5 U.S.C. § 1204. Instead, OSC gives advice in the form of opinions that have no binding effect on the MSPB. *Id.* § 1212(f). As the D.C. Circuit has explained, these interrelated statutes provide the MSPB with oversight authority "in the review of Hatch Act regulations promulgated by the OPM," *American Fed'n of Gov't Employees*, 747 F.2d at 755, while insulating the MSPB from any concern about the myriad non-binding OSC advisory opinions that "offer essentially a forecast, albeit an educated one, of the way the MSPB would rule if an actual case materialized." *Id.* at 753-54.

## III. *Congressional Ratification of OPM's Role*

The regime dividing the responsibility for Hatch Act implementation into three discrete tasks remained in place while Congress formulated the Hatch Act Amendments, and apparently informed congressional debate concerning the allocation of regulatory responsibility. *See, e.g.,* 139 Cong. Rec. S8610 (daily ed. July 13, 1993) (statement of Senator Roth indicating that, in lieu of congressional amendment of the Hatch Act, "the Office of Personnel Management, in consultation with the Office of Special Counsel as well as the Department of Justice, should promulgate new regulations to clarify the restrictions on political activity"). In

---

[7] OPM cited the following authorities to support its revision of 5 C.F R. pt. 733: "5 U.S.C 3301, 3302, 7301, 7321, 7322, 7323, 7324, 7325, and 7327; Reorganization Plan No. 2 of 1978, 3 CFR 1978 Comp p.323, and E.O. 12107, 3 CFR 1978 Comp. p.264 " *See* 49 Fed Reg. at 17,432.

fact, while the Hatch Act Amendments wended their way through Congress, OPM expressly acknowledged its obligation to issue Hatch Act regulations: on April 26, 1993, OPM reported in its semiannual regulatory agenda that it intended to review the existing regulations regarding political activity of federal employees. *See* Office of Personnel Management Semiannual Regulatory Agenda, 58 Fed. Reg. 25,163, 25,169 (1993). In adopting the Hatch Act Amendments, which include no provision reassigning any regulatory functions among the MSPB, OSC, and OPM, Congress ratified the roles historically adopted by the three agencies.

The legislative history of the Hatch Act Amendments fortifies the conclusion that Congress approved of OPM's traditional obligation to issue Hatch Act regulations. At the inception of the process to amend the Hatch Act during the 103d Congress, the House of Representatives broke with settled practice by assigning to the Special Counsel the obligation to "prescribe any rules and regulations necessary to carry out" the Hatch Act amendments. H.R. 20, 103d Cong., § 2(a) (1993) (proposed version of 5 U.S.C. § 7327 published at 139 Cong. Rec. 3983 (1993)). The Senate, in contrast, passed a bill striking out the entire House bill — including the assignment of rule-making authority to the Special Counsel — and adding provisions that authorized OPM to prescribe regulations for certain conduct. 139 Cong. Rec. S9169, S9170-71 (daily ed. July 21, 1993). The House ultimately acceded to the Senate version of the Hatch Act reform bill, including the provisions assigning the responsibility for issuing various regulations to OPM. *Id.* at H6814, H6815-16 (daily ed. Sept. 21, 1993).

The tripartite system of Hatch Act implementation created in 1978 has not been altered by the Hatch Act Amendments, which assign to OPM the authority to prescribe regulations on two specific subjects in language that treats OPM as the agency with plenary authority to issue Hatch Act regulations. *See* Hatch Act Amendments, sec. 2(a), § 7325, 107 Stat. at 1004 ("The Office of Personnel Management may prescribe regulations permitting employees" in certain geographic areas "to take an active part in political management and political campaigns involving the municipality or other political subdivision in which they reside."); *id.* sec. 8(a), § 3303(e), 107 Stat. at 1007 ("Under regulations prescribed by the Office of Personnel Management, the head of each agency shall ensure that employees and applicants are given notice of the provisions of this section" pertaining to political recommendations.). In contrast, the Hatch Act Amendments mention OSC only in the context of broadening the investigative authority of the Special Counsel. *See id.* sec. 3, § 1216(c), 107 Stat. at 1004. These provisions prompted the Congressional Budget Office to observe that "[t]he bill would require the Office of Personnel Management (OPM) to issue the necessary regulations and the Office of Special Counsel to enforce these regulations." S. Rep. No. 103-57 at 22, *reprinted in* 1993 U.S.C.C.A.N. at 1823. We agree with this assessment.

5

## IV. *Conclusion*

Since 1978, OPM has assumed the responsibility for promulgating Hatch Act regulations. The Hatch Act Amendments ratified and supplemented OPM's authority to issue general Hatch Act regulations, while concomitantly reaffirming and augmenting OSC's traditional role in investigating and prosecuting Hatch Act violations. Accordingly, we conclude that OPM has the authority to promulgate revised Hatch Act regulations.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*

6